**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JACOB SHELTON,

                    Plaintiff,

v.                                  CIVIL ACTION NO.   2:20-cv-00457

COLLINS CAREER CENTER, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Lawrence County Joint Vocational School District's[1] ("LCJVSD") Motion to Dismiss, (ECF No. 4), and Defendant West Virginia Fire Commission, Office of the State Fire Marshal's ("WVFC") Motion to Dismiss.  (ECF No. 6.) For the reasons more fully explained below, LCJVSD's motion, (ECF No. 4), is **GRANTED**, and WVFC's motion, (ECF No. 6), is **DENIED AS MOOT**.

*I.    BACKGROUND*

This action arises out of Plaintiff Jacob Shelton's ("Plaintiff") attendance at LCJVSD's career and technical school, the Collins Career Technical Center in Lawrence County, Ohio. Plaintiff is a resident of West Virginia.   (ECF No. 1-2 at ¶ 5.)   LCJVSD is a public school district in Chesapeake, Ohio, and is thus a political subdivision of the state of Ohio pursuant to O.R.C. Ann. § 2744.01(f).   (ECF No. 4 at ¶¶ 3–4.)   LCJVSD operates the Collins Career Technical

---

[1] The Lawrence County Joint Vocational School District was incorrectly named in Plaintiff's Complaint as "Collins Career Center d/b/a Collins Technical Center" and the "Board of Directors Collins Career Center d/b/a Collins Career Technical Center."   (ECF No. 5 at 1.)   The parties have since stipulated that LCJVSD is the properly-named party. (ECF No. 7 at 1.)

Center (the "Center" or "Career Center") under the Ohio Department of Education and the Ohio Department of Higher Education. (*Id.* at ¶ 3.) WVFC is an agency of the state of West Virginia. (ECF No. 1-2 at ¶ 7.) The following factual allegations are gleaned from Plaintiff's complaint, (ECF No. 1-2.)

Plaintiff applied and was admitted to the Collins Career Technical Center to complete an electrical journeyman program. (*Id.* at ¶ 9.) Plaintiff alleges that he was promised by the Center that the program was accredited and would allow him to sit "for any testing," including the State of West Virginia. (*Id.* at ¶ 10.) Plaintiff took out loans, which are now reported as debts on Plaintiff's credit reports, to pay for the courses offered by the Career Center. (*Id.* at ¶¶ 11–13.) The Career Center's electrical journeyman program, however, was not accredited as advertised and promised to Plaintiff. (*Id.* at ¶ 14.) Plaintiff alleges that, because of the lack of accreditation, he cannot sit for the electrical journeyman test in the State of West Virginia. (*Id.* at ¶ 15.)

LCJVSD, however, notes that Plaintiff has failed to include necessary facts relevant to this motion to dismiss. First, LCJVSD asserts that Plaintiff graduated from the Career Center on January 15, 2015, over five years ago. (ECF No. 4–3.) Further, LCJVSD asserts that Plaintiff applied to sit for the West Virginia Journeyman Electrical Test on December 30, 2014, (ECF No. 4–4), and in fact was permitted to sit for the test on February 23, 2015. (*Id.*) Plaintiff, however, failed the exam with a score of 60. (*Id.*) Plaintiff does not dispute these additional facts, and in fact, confirms them. (ECF No. 7 at 3.)

Plaintiff filed his complaint in the Circuit Court of Kanawha County, West Virginia, on June 3, 2020. (ECF No. 1 at 1; ECF No. 1-2.) Plaintiff alleges eleven separate causes of action against LCJVSD. Those causes of action include breach of contract (Count I); breach of the

covenant of good faith and fair dealing (Count II); constructive fraud (Count IV);[2] intentional misrepresentation (Count V); negligent misrepresentation (Count VI); unconscionability (Count VII); breach of fiduciary duties (Count IX); violation of the West Virginia Consumer Credit and Protection Act (Count X); punitive damages (Count XI); and duress, undue influence and economic loss (Count XII).   (*See generally* ECF No. 1-2.)

On July 2, 2020, LCJVSD removed this action to this Court on the basis of diversity jurisdiction.[3]   (*See* ECF No. 1 at 3.)   On July 9, 2020, LCJVSD filed its motion to dismiss.   (ECF No. 6.)   Plaintiff filed his response in opposition on August 3, 2020.   (ECF No. 7.)   LCJVSD timely filed its reply on August 10, 2020.   (ECF No. 8.)

WVFC filed its motion to dismiss on July 27, 2020 and similarly sought to dismiss the complaint in its entirety.   (ECF No. 6.)   Plaintiff failed to file a reply.   Subsequently, Plaintiff stipulated to a voluntarily dismissal of all claims asserted against WVFC pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).[4]

With the motions fully briefed, these motions are now ripe for adjudication.

## II.   LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give

---

[2] Plaintiff lists a "Count III Fraud" on page 4 of his complaint with his other causes of action but has apparently neglected to actually include a Count III in the complaint.

[3] LCJVSD also alleges that the West Virginia Fire Commission, Office of the Fire State Marshal was fraudulently joined, as Plaintiff failed to allege any cause of action—or any act of wrongdoing—against the WVFC.   (ECF No. 1 at 3.)

[4] The Dismissal Order associated with the stipulation, (ECF No. 9), shall be filed simultaneously with this Order.

the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."   *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"   *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."   *Iqbal*, 556 U.S. at 679.   This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*   Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.*   "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than

the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

Finally, when reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a reviewing court "may properly take judicial notice of public record," and may also consider other extrinsic documents that are authentic and "integral to and explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment. *Chesapeake Bay Foundation v. Severstal Sparrows Point, LLC*, 794 F. Supp.2d 602, 610–11 (D. Md. 2011) (citing *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). *See also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.   DISCUSSION

At issue are the Defendants' motions to dismiss.   The Court will first address WVFC's motion, (ECF No. 6), before addressing LCJVSD's motion, (ECF No. 4).

### A.   West Virginia Fire Commission, Office of the State Fire Marshal

The parties' filed a stipulation of voluntary dismissal of the claims against WVFC on September 9, 2020.   (ECF No. 11.)   Therefore, and pursuant to this Court's order, WVFC has been dismissed from this action, and the WVFC's motion, (ECF No. 6), is **DENIED AS MOOT**.

The Court feels compelled, however, to highlight several items in relation to the WVFC's motion, especially when considering the responses Plaintiff offers in opposition to LCJVSD's motion.   First and foremost, Plaintiff has failed to respond to the WVFC's motion, despite it being filed more than a month before the stipulated dismissal.   (*See* ECF No. 6.)   This alone would lead to the granting of WVFC's motion, as any arguments not addressed in response are deemed

5

waived.  *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion ... can indicate that the non-moving party concedes the point or abandons the claim.")

Of greater import, however, is the appearance that this Court would lack subject-matter jurisdiction over this action against WVFC, as federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984).  The West Virginia Fire Commission, Office of the State Fire Marshal is a state agency created by an act of the West Virginia Legislature in 1909.  *See History of the W. Va. State Fire Marshal's Off. & the State Fire Comm'n*, State of W. Va., https://firemarshal.wv.gov/about/Pages/History-.aspx (last visited Nov. 9, 2020).  The WVFC is now housed under the Department of Homeland Security of the State of West Virginia.  W. Va. Code § 15A-10-1.  As such, it cannot be sued for monetary damages under the Eleventh Amendment of the United States Constitution.  *Webb v. Parsons*, 2011 WL 2076419 (S.D. W. Va. May 6, 2011) (finding that the West Virginia Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment).[5]

Finally, Plaintiff failed to allege any claims against WVFC.  Indeed, the thrust of Plaintiff's allegations is that the Career Center fraudulently caused Plaintiff to incur debt for classes taken for which the Career Center was not accredited, thereby preventing him from sitting

---

[5] WVFC asserts that it did not consent to removal and that Plaintiff's naming of it in this lawsuit was fraudulent so that Plaintiff could file in West Virginia and avoid federal court by defeating diversity.  (ECF No. 6 at 3, n.2.)

for the West Virginia licensure exam.   (*See* ECF No. 1-2 at ¶ 15.)   Absent from the complaint are any allegations of misconduct, wrongdoing, tortious conduct, or really any cause of action or allegation against WVFC.

The Court would have granted WVFC's motion on any of the above grounds were it not already moot due to the stipulated dismissal.   Regardless, because the parties have stipulated to WVFC's dismissal as a defendant in this matter, WVFC's motion is **DENIED AS MOOT**.

### B.  Lawrence County Joint Vocational School District

LCJVSD raises several arguments for the dismissal of Plaintiff's complaint.   First, LCJVSD argues that Plaintiff's "non-contractual claims" are barred by the two-year statute of limitations codified in Ohio Revised Code § 2744.04(A).   (ECF No. 4 at 4.)   LCJVSD next argues that Plaintiff's contractual claims are similarly barred by the statute of limitations established in Ohio Revised Code § 1302.98(A).   (*Id.* at 5.)   Further, LCJVSD asserts that Counts IV, V, IX, and X are all barred by the statutes of limitations under West Virginia law, specifically W. Va. Code §§ 55-2-12 and 46A-5-101.   (*Id.* at 6.)   LCJVSD also asserts that Plaintiff's claims of "unconscionability" and "duress, undue influence, and economic loss" are simply not cognizable as independent causes of action.   (*Id.* at 8.)   Next, LCJVSD argues that, as a political subdivision of the State of Ohio, it is entitled to certain immunities under Ohio law, just as it would be under West Virginia law.   (*Id.* at 9.)   Finally, LCJVSD argues that the West Virginia Consumer Credit Protection Act does not apply to LCJVSD, as any contractual relationship between it and Plaintiff does not meet the definition of a consumer credit sale under W. Va. Code § 46A-2-102(13)(a)(i).   (*Id.* at 10.)

The statute of limitations issue is, in the Court's view, the most critical aspect of this analysis as to all of Plaintiff's claims.    LCJVSD has apparently noticed this and argued that all of Plaintiff's claims are beyond the applicable statutes of limitations.    Before the Court can decide whether this argument is accurate, though, several issues must be addressed.    The first issue is whether *American Pipe & Construction Company. v. Utah*, 414 U.S. 538 (1974) and its progeny serve to toll any of the applicable limitations periods, as Plaintiff has argued.    Plaintiff's central argument is that *Cyfers v. Collins Career Center*, Civ. Action No. 2:18-cv-01127 (hereinafter "*Cyfers*"), effectively tolled the applicable statutes of limitations as to Plaintiff's claims.    (ECF No. 7 at 3–4 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).)    The second issue is which state's statutes of limitations applies to Plaintiff's claims.    With this in mind, the Court shall begin its analysis with *American Pipe*.

    *1.* American Pipe *and the Equitable Tolling of Individual Claims for Putative Class Members*

In *American Pipe & Construction Company*, the Supreme Court of the United States faced a predicament in which members of a proposed class action were asked to rely on a class representative to protect their interests in the litigation, while simultaneously encouraged to pursue their own actions or to intervene in the proposed class action to protect their individual claims in the event that class certification was denied.    Confronting this dilemma, the Court reasoned as follows:

> In the present case the District Court ordered that the suit could not continue as a class action, and the participation denied to the respondents because of the running of the limitation period was not membership in the class, but rather the privilege of intervening in an individual suit pursuant to Rule 24(b)(2).[]    We hold that in this posture, at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the

> statute for all purported members of the class who make timely motions to intervene
> after the court has found the suit inappropriate for class action status.

*Am. Pipe & Const. Co.*, 414 U.S. at 552–53 (footnote omitted).   Addressing concerns that this

rule might frustrate the purpose of statutes of limitations, the Court reasoned that the rule would

balance fair notice to a defendant and the barring of a plaintiff who "has slept on his rights" because

the class representative would provide notice of the claims to the defendant, as well as the "number

and generic identities of the potential plaintiffs who may participate in judgment."   *Id.* at 554–55.

In this way, the defendant would have "essential information" necessary to defend the suit within

the period set by the statute of limitations.   *Id.* at 555.   *See also Korwek v. Hunt*, 827 F.2d 874,

879 (2d Cir. 1987) ("*American Pipe* and [*Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345

(1983)] represent a careful balancing of the interests of plaintiffs, defendants, and the court system.

Flexibility, notice, and efficiency are the watchwords of these opinions.")   Thus, *American Pipe*

stands for the proposition that the filing of a class action can toll a statute of limitations for any

proposed class member, but only until the certification of the class is denied.   *See Crown, Cork &*

*Seal Co., Inc.* 462 U.S. at 353–54 ("Once the statute of limitations has been tolled, it remains tolled

for all members of the putative class until class certification is denied.").   *Crown, Cork & Seal*

expanded the rule in *American Pipe*, thereby expanding the application of the tolling period to

whenever a putative class is denied certification for any reason.[6]   *Id.*

---

[6] This Court notes that recent Supreme Court and circuit court decisions have restricted the application of *American Pipe* and *Crown, Cork & Seal*.   *See, e.g.*, *China Agritech, Inc. v. Resh*, 138 S.Ct. 1800, 201 L.Ed.2d 123 (2018) (denying equitable tolling for persons pursuing a new class action beyond the time allowed by the applicable statute of limitations); *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701 (3d Cir. 2019) (denying tolling to new class action while original class action, though timely brought, was pending appeal).   Neither of these scenarios are present in the instant action.

With the basic framework of *American Pipe* tolling established, the Court now turns to Plaintiff's argument regarding *Cyfers*.   In *Cyfers*, the named plaintiff asserted identical claims as are asserted here.[7]   (ECF No. 8–1.)   The plaintiff filed his complaint in the Circuit Court of Kanawha County, West Virginia, on May 23, 2018.   (*Id.*)   LCJVSD, again an improperly-named defendant, then removed the action to this court on July 16, 2018.   The complaint also defined its proposed class as follows:

> Plaintiff Cyfers brings this claim on behalf of all persons who: (1) took classes at [the Career Center]; (2) were told it was an accredited school; (3) were denied application to sit for the test to become an electrical journeyman; (4) forced to pay [the Career Center] and/or student loans; and/or (5) has attended [the Career Center] for electrical certifications.

(*Id.* at ¶ 2.)   Notably, the proposed class was never certified in *Cyfers*.   In fact, the plaintiff there never moved for certification of the class at all.   *See Cyfers*, Civ. Action No. 2:18-cv-01127. Instead, the action was dismissed on August 2, 2019, pursuant to a settlement reached by the parties.[8]   *Id.*

Plaintiff's reliance on *American Pipe* is ultimately futile.   As the Fourth Circuit has interpreted the Supreme Court's ruling in *American Pipe*, "the commencement of a class action equitably tolls the running of the statute of limitations for proposed class members' claims until the class action is denied."   *Bridges v. Department of Maryland,* 441 F.3d 197, 210 (4th Cir. 2006). This district has also recognized that "the commencement of a class suit tolls the running of the

---

[7] The Court feels compelled to note that not only is every claim identical, the complaint in *Cyfers* even omits "Count III – Fraud" despite listing it in the initial enumeration of claims, just as in this matter.   (*See* ECF No. 8–1.)   Of course, the plaintiff in *Cyfers* was also represented by Plaintiff's counsel here.

[8] The Court notes that WVFC was also voluntarily dismissed early in the *Cyfers* matter, after LCJVSD's allegation that it was fraudulently joined.   *See Cyfers v. Collins Career Center*, Civ. Action No. 2:18-cv-01127, 2018 WL 5269368 at *1 (S.D. W. Va. Oct. 23, 2018).   As established *supra*, this exact occurrence happened in this matter as well.

statute of limitations for all purported members of the class *unless and until* the court determines not to certify the class." *Mallory v. Mortgage America, Inc.*, 67 F.Supp.2d 601, 615 (S.D. W. Va. 1999) (emphasis added).   This rule was articulated to protect the interests of absentee class members and their objectively reasonable reliance on the class representative.   *See Bridges*, 441 F.3d at 210.   But despite their apparent breadth, *American Pipe* and its progeny *Crown, Cork & Seal* remain "limited exception[s] to the universal rule that statutes of limitations are impervious to equitable exceptions."   *Id.* at 211.

As relevant here, the named plaintiff in *Cyfers* never made a motion to certify the class. Instead, the claims were settled.   *See Cyfers*, Civ. Action No. 2:18-cv-01127 (S.D. W. Va. Aug. 2, 2018).   If putative class members were included in the settlement, which is not clear to the Court, then those members would have received notice of the settlement and given the opportunity to object or otherwise be excluded.   *See generally* Fed. R. Civ. Pro. 23(e).   However, if the settlement only involved the individual plaintiff, then those excluded putative class members would be left to file their own individual actions.   *See Bridges*, 441 F.3d at 212 ("Such conduct by the representative parties was inconsistent with the case proceeding as a class action inasmuch as the representative parties originally alleged in their complaint that they represented absent class members for injunctive and declaratory relief. Yet they were settling those claims only on behalf of themselves. . . . If [the proposed class members] were inclined to preserve those claims, they would have had to file separate suits or a motion to intervene.")   In the Court's view, it seems unlikely that Plaintiff can claim objectively reasonable reliance on the named representative in *Cyfers* to protect his interests, given the resolution of the claims without any action on class certification and the significant amount of time in which it took Plaintiff to initiate this action, as

11

will be demonstrated in the following sections.[9]   Indeed, even if the Court accepts Plaintiff's proposition that *Cyfers* tolled his claims,[10] Plaintiff has failed to demonstrate that his claim survives the statute of limitations.   Still, this Court holds that Plaintiff is not entitled to tolling of the statute of limitations in this matter pursuant to *American Pipe* and *Crown, Cork & Seal*.

### 2.   Choice-of-Law Issues as to the Statutes of Limitations

The next issue for the Court is to apply the proper choice-of-law rules to these claims. This action was removed to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1 at 3.)   Because this Court has subject-matter jurisdiction based on diversity, the Court must apply the choice-of-law rules of the state of this district: West Virginia.   *Kenney v. Independent Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014).

In this instance, however, LCJVSD is a creature of the state of Ohio, whose legislature has statutorily granted it immunity from suit—save for limited exceptions—and a general two-year statute of limitations.   *See* Ohio Rev. Code § 2744.04(A).   LCJVSD therefore argues that this statute of limitations is substantive, rather than procedural, and bars every non-contractual claim asserted against it by Plaintiff.   (ECF No. 5 at 3.)   Plaintiff did not respond to this argument

---

[9] LCJVSD also argues that Plaintiff was unlikely to be a potential class member, as he was actually allowed to sit for the West Virginia exam.   Parties outside of the proposed class are not entitled to tolling under *American Pipe*/*Crown, Cork & Seal* until the named plaintiff repudiates the proposed class and provides adequate notice that the definition of the class has changed.   *Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003).   The Court need not resolve this question here, and therefore declines to address it.

[10] This Court has previously recognized, without deciding, that there is a question as to whether *American Pipe* applies to toll state law claims.   *See In re Boston Scientific Corp., Pelvic Repair Sys. Prods. Liability Litigation*, Civ. Action No. 2:12-cv-5131, 2015 WL 1405493 at *4, n.1 (S.D. W. Va. Mar. 26, 2015) (comparing *Senger Bros. Nursery v. E.I. Dupont de Nemours & Co.,* 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Plaintiff's reliance on *American Pipe* and *Crown* is misplaced.   *American Pipe* and *Crown* did not involve a claim brought in federal court on diversity of citizenship."), with *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1282 (11th Cir. 2003) ("There is no dispute that *American Pipe* has been followed in Florida state courts.")).   The Court need not and does not address that question here.

directly and instead relied on his argument that *American Pipe* tolled any applicable statute of limitations.

The Supreme Court of Appeals of West Virginia has determined that statutes of limitations are procedural in nature, "so that the applicable statute of the state where the trial is had is applied and governs." *Tice v. E.I. Du Pont De Nemours & Co.,* 106 S.E.2d 107, 111 (W. Va. 1958). *See also First United Methodist Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862, 865 (4th Cir. 1989) (recognizing a statute of limitations is a "procedural device"); *Armor v. Michelin Tire Corp.*, 923 F.Supp. 103, 106 (S.D. W. Va. 1996). *Cf. Oakley v. Wagner*, 431 S.E.2d 676, 680 (W. Va. 1993) ("Long ago, we held that applying the statute of limitations of the forum to a foreign substantive right did not deny full faith and credit, . . . . Recently we referred to the well established principle of conflict of laws that [i]f action is barred by the statute of limitations of the forum, no action can be maintained though action is not barred in the state where the cause of action arose.") (quoting *Wells v. Simonds Abrasive Company,* 345 U.S. 514, (1953) (internal citations and quotations omitted)).

When applying choice-of-law rules in West Virginia, claims based in contract are generally governed by the rule of *lex loci contractus*. *Johnson v. Neal*, 418 S.E.2d 349, 351 (W. Va. 1992) ("[W]e then discussed conflict of laws principles applicable to contracts and determined that the parties reasonably expect the laws of the state where the policy was issued to control rather than the laws of another state whose only connection to the dispute is the fortuity that the accident occurred there.") (internal quotations omitted).   In this case, Plaintiff's contract claims are based in Ohio and, pursuant to the rule of *lex loci contractus*, Ohio law applies.

For claims sounding in tort, the Court must apply the rule of *lex loci delicti*, or in other words, "the substantive rights between the parties are determined by the law of the place of injury." *Vest v. St. Albans Psychiatric Hosp., Inc.*, 387 S.E.2d 282 283 (W. Va. 1989) (citing *Paul v. National Life*, 352 S.E.2d 550 (1986)).   Plaintiff's tort claims allege injuries occurring in West Virginia—namely, that he cannot sit for the licensure exam—and thus the law of West Virginia shall apply.[11]

### a. Plaintiff's "Non-contractual" Claims and the Statute of Limitations

Defendant LCJVSD argues first that all of Plaintiff's "non-contractual claims" are barred by the statute of limitations contained within Ohio Revised Code § 2744.04(A).   (*Id.* at 3.)   As a political subdivision and pursuant to this section, LCJVSD asserts that any non-contractual claim asserted against it has a two-year limitation.   (*Id.* at 3–4.)   Because Plaintiff graduated from the Career Center in January 2015 and sat for the West Virginia Journeyman Electrician Test in February 2015, LCJVSD argues that his claims accrued over 5 years ago.   (*Id.* at 4.)

In response, Plaintiff argues that his claims relate back to the *Cyfers* class action that was filed on May 23, 2018.   (ECF No. 7 at 3–4.)   Plaintiff argues that the commencement of the *Cyfers* action effectively tolled the applicable statute of limitations as to Plaintiff's claims.   (*Id.* at 3–4 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).)   Finally, in light of the allegation that Plaintiff did in fact sit for the West Virginia Journeyman Electrician Test, Plaintiff maintains that his claims accrued when he applied to sit for the exam and was denied the same.   (*Id.* at 5.)

---

[11] Even though the Court will apply the statutes of limitations found under West Virginia law, the Court notes that the same outcome would be reached under Ohio Rev. Code § 2744.04(A).   LCJVSD has also noted that, in the event the Court declined to apply Ohio Rev. Code § 2744.04, the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq.*, similarly establishes a two-year statute of limitations for claims brought against a political subdivision.   (ECF No. 5 at 3 n.2.)

As this Court reasoned above, it shall apply the statute of limitations found in W. Va. Code § 29-12A-6(a), which establishes a two-year period in which actions to recover damages may be brought against political subdivisions. Thus, even if the Court were to accept Plaintiff's argument that these claims accrued in October 2016—the date which he claims he applied for and was denied admittance to the West Virginia Journeyman Electrician Test—his nearly four-year delay is beyond either statute of limitations. (ECF No. 7 at 4.) Therefore, LCJVSD's motion is **GRANTED** as to Plaintiff's non-contractual claims.

This result is reached even if the Court assumes *arguendo* that *American Pipe* tolled the statute of limitations to Plaintiff's claims. Plaintiff graduated from the Center on January 15, 2015, (ECF No. 4–3), and he actually sat for the West Virginia Journeyman Electrician Test on February 23, 2015. (ECF No. 4–4.) Plaintiff failed that exam. (*Id.*) But Plaintiff avers that he attempted to retake the exam in October 2016 and was denied. (ECF No. 7 at 4.) Construing this approximate date in favor of Plaintiff to be October 31, 2016, the *Cyfers* action was first brought on May 23, 2018, a period of 1 year, 6 months, 3 weeks, and 2 days, or a total of 569 days, after Plaintiff's last claimed attempt. If the Court accepts that the time was tolled with the filing of the *Cyfers* action until its resolution, then the clock started again on August 2, 2019.[12] Plaintiff did not file the present action until June 3, 2020. (ECF No. 1–2.) The difference between those two dates is 10 months and 1 day, or 306 days total. That brings the entire time to 875 days, or a

---

[12] Plaintiff argues that the *Cyfers* was dismissed on August 20, 2019. (ECF No. 7 at 3.) A cursory review of the record indicates that the dismissal order was signed on August 2, 2019, and the action closed on the same date. As shown, it is of no matter to the tolling of the statute of limitations, but the Court notes the apparent and continued sloppiness of Plaintiff's filings.

full 145 days over the two-year statute of limitations under both Ohio Rev. Code § 2744.04(A) and W. Va. Code § 29-12A-6(a).[13]

Plaintiff is not entitled to tolling of the statute of limitations in this matter pursuant to *American Pipe* and *Crown, Cork & Seal*.   His non-contractual claims are untimely pursuant to W. Va. Code § 29-12A-6(a).   For the foregoing reasons, LCJVSD's motion is **GRANTED** as to all Plaintiff's non-contractual claims.

### b.   *Plaintiff's Contractual Claims and the Statute of Limitations*

Next, LCJVSD argues that, under the law of Ohio, Plaintiff's contractual claims—Counts I and II—are barred by the statute of limitations found in Ohio Rev. Code § 1302.98(A).   (ECF No. 5 at 5.)   LCJVSD argues that Plaintiff's contract claims arise out of his attendance at and receipt of a degree from the Career Center, but that the degree was not "what he was contractually entitled to receive."   (*Id.*)   LCJVSD alleges that Plaintiff was aware that his degree would not allow him to sit for the West Virginia Journeyman Electrician Test—despite him actually doing so—and that he knew this before receiving it.   (*Id.*)   Because Plaintiff graduated on January 15, 2015, LCJVSD argues that four-year statute of limitations in Ohio Rev. Code § 1302.98(A) operates to bar Plaintiff from asserting his claims.

Plaintiff does not address this argument directly but appears to rely on his argument that *Cyfers* operated to toll the statute of limitations pursuant to *American Pipe*.   (*See* ECF No. 7 at 3–5.)   His reliance is again to no avail.

---

[13] Plaintiff has alleged a four-year statute of limitations applies to these claims but has not provided any basis for this assertion.   Plaintiff has also not argued why either Ohio Rev. Code § 2744.04(A) or W. Va. Code § 29-12A-6(a) should not apply.   The Court also does not find any authority as to why either section of code should not apply.

As the Court already determined, *American Pipe* does not apply to toll the statute of limitations on Plaintiff's claims.   Moreover, and notwithstanding this Court's questions as to the application of *American Pipe* to toll state-law claims and whether Plaintiff could even be considered a potential class member in *Cyfers*, Plaintiff's complaint is untimely even if the Court accepts that the tolling rule of *American Pipe* would apply.   Plaintiff graduated on January 15, 2015, and his contractual claims all relate to his earning of a degree that he alleges was not what he was entitled to receive.   His harm, as to the contractual claims, therefore accrued on January 15, 2015.  *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 473 (6th Cir. 2013) (applying Ohio law).   The *Cyfers* matter was not initiated until May 23, 2018, a span of 1,224 days (3 years, 4 months, 1 week, and 1 day) following Plaintiff's graduation.   The *Cyfers* matter was resolved on August 2, 2019.   Plaintiff did not initiate this action until June 3, 2020, or 306 days (10 months, 1 day) following *Cyfers* resolution.   Totaled, that time that Plaintiff did not file an action is 1,530 days, over the four-year statute of limitations imposed by Ohio Rev. Code § 1302.98(A).   Even if the *American Pipe* tolling is applied, Plaintiff's claims are barred by the statute of limitations.

There is no conclusion here other than Plaintiff has slept on his rights.   For the foregoing reasons, LCJVSD's motion is **GRANTED** as to Counts I and II.

### c.  *Plaintiff's Tort Claims under West Virginia Statutes of Limitations*

Leaving no stone unturned, LCJVSD next argues that Plaintiff's claims "sounding in tort" are similarly barred by the statute of limitations pursuant to the laws of the state of West Virginia.[14]

---

[14] While the Court has already determined that Plaintiff's "non-contractual claims" are subject to dismissal pursuant to the statute of limitations under W. Va. Code § 29-12A-6(a), the Court shall address LCJVSD's statute of limitations argument under the remaining West Virginia statutes.

(ECF No. 5 at 6.)   Specifically, LCJVSD argues that Counts IV (constructive fraud); V (intentional misrepresentation); VI (negligent misrepresentation); IX (breach of fiduciary duties); and X (West Virginia Consumer Credit & Protection Act) are all barred by the applicable statute of limitations.   (*Id.*)   LCJVSD further argues that all these claims occurred while Plaintiff was a student and therefore accrued "prior to Plaintiff graduating January of 2015." (*Id.*)

Again, Plaintiff only relies on *American Pipe* and *Cyfers* for the proposition that his claims are timely.   (ECF No. 7 at 3–5.)   Plaintiff does not dispute that these claims accrued before January 15, 2015, nor does he dispute the application of the statutes of limitation found in the West Virginia Code.

Under the *lex loci delicti* approach, a court shall apply the "law of the place of the wrong." *Kenney*, 744 F.3d at 908.   "Although conduct that causes harm can occur in one state and the resulting injury to a plaintiff can occur in another state, 'the substantive rights between the parties are determined by the law of the place of injury.'"   *Id.* (citing *West Virginia ex rel. Chemtall Inc. v. Madden,* 607 S.E.2d 772, 779–80 (W. Va. 2004)).   Here, Plaintiff's injury is in West Virginia, as he has alleged he is a West Virginia resident and his claims allege that he cannot take the West Virginia Journeyman Electrician Test.

Claims for constructive fraud are subject to the two-year statute of limitation provided by W. Va. Code § 55-2-12.   *See Evans v. United Bank, Inc.*, 775 S.E.2d 500, 508 n.8 (W. Va. 2015). The thrust of Count IV is that Plaintiff was attending a program that was misrepresented to him as being accredited by the WVFC, which would allow him to sit for the West Virginia Journeyman Electrician Test.   (ECF No. 1–2 at ¶¶ 32–41.)   Plaintiff alleges that he continued his education at the Career Center based on this misrepresentation, until his graduation in January 2015.   (*Id.*)   As

the Court has already explained, *American Pipe* does not toll Plaintiff's claims.   Plaintiff filed this action on June 3, 2020, well outside of the two-year statute of limitations.   LCJVSD's motion is therefore **GRANTED** as to Count IV.

Claims for intentional misrepresentation are subject to the two-year statute of limitation provided by W. Va. Code § 55-2-12.   *See Powell v. Bank of America, N.A.*, 842 F.Supp.2d 966, 978 (S.D. W. Va. 2012).   Similar to Plaintiff's allegations regarding constructive fraud, Plaintiff asserts that LCJVSD's "repeatedly misrepresented" the Career Center's accreditation and that he relied on those misrepresentations, which in turn affected his ability to sit for the West Virginia Journeyman Electrician Test.  (ECF No. 1–2 at ¶¶ 42–46.)   Plaintiff filed this action on June 3, 2020, well outside of the two-year statute of limitations.   LCJVSD's motion is therefore **GRANTED** as to Count V.

Claims for negligent misrepresentation are subject to the two-year statute of limitations provided by W. Va. Code § 55-2-12.   *See Trafalgar House Const., Inc. v. ZMM, Inc.*, 567 S.E.2d 294, 299 (W. Va. 2002) ("Under West Virginia law, claims in tort for negligence, professional negligence, and misrepresentation (fraudulent or negligent) are governed by a two-year statute of limitation.")   Plaintiff has based this claim on LCJVSD's "failing to exercise ordinary care and act[ing] in accordance with the standard of governing board of education institutions in making representations to the Plaintiff and/or omitting material facts to the Plaintiff."   (ECF No. 1–2 at ¶ 49.)   Plaintiff further alleged that LCJVSD "had [this] duty" "when [it] solicited the Plaintiff to enroll and/or continue his enrollment in the program."   (*Id.* at ¶ 47.)   By Plaintiff's allegation, this claim accrued no later than January 15, 2015, the last day he could be considered a student at

the Career Center.   Plaintiff filed this action on June 3, 2020, well outside of the two-year statute of limitations.   LCJVSD's motion is therefore **GRANTED** as to Count VI.

Claims for breach of fiduciary duty are subject to the two-year statute of limitations provided by W. Va. Code § 55-2-12.   *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009). Plaintiff alleges, in support of this claim, that LCJVSD failed to provide "timely, accurate, truthful and complete information to Plaintiff concerning the accreditation of the program, as well as assisting him afterwards"; treat "Plaintiff's interest with at least the same respect and weight as the Defendants gave to Defendants' own interests"; "provide funding and other resources necessary" to appropriately staff the program and provide facilities in compliance with general standards; and otherwise provide assistance to Plaintiff.   (ECF No. 1–2 at ¶¶ 52–57.)   Plaintiff's allegations occurred during the time he was a student, meaning this claim accrued no later than January 15, 2015.   Again, Plaintiff does not dispute this point.   Plaintiff filed this action on June 3, 2020, well outside of the two-year statute of limitations.   LCJVSD's motion is therefore **GRANTED** as to Count IX.

The statute of limitations for claims brought under the West Virginia Consumer Credit Protection Act is four years.   W. Va. Code § 46A-5-101.   Plaintiff alleges that LCJVSD violated this Act in several ways, all of which he alleges were conducted with "conspiratorial intent to obtain . . . and keep the Plaintiff's money."   (ECF No. 1–2 at ¶¶ 58–60.)   These injuries were incurred while Plaintiff was a student at the Career Center, a point not disputed or addressed by Plaintiff.   As demonstrated previously, Plaintiff filed this action on June 3, 2020, well outside of the four-year statute of limitations, and his reliance on *American Pipe*—if applicable—does not save the claims.   LCJVSD's motion is **GRANTED** as to Count X.

### 3.  *Unconscionability, Duress, Undue Influence, and Economic Loss*

Next, LCJVSD argues that Counts VIII and XII are subject to dismissal because "unconscionability" and "duress, undue influence, and economic loss" are not cognizable claims. (ECF No. 5 at 9.)   Plaintiff has failed to respond to this argument.   Any argument not responded to is deemed conceded and waived.  *See Brevard*, 2020 WL 1860713 at *8; *Taylor*, 2020 WL 890247, at *2 (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship*, 2018 WL 3581092, at *9 ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim.")   Therefore, LCJVSD's motion is **GRANTED** as to Count VIII and Count XII.

### 4.  *Claims Against LCJVSD and Political Subdivision Immunity under Ohio Rev. Code § 2744.02.*

LCJVSD next argues that, as a political subdivision of the state of Ohio, it is entitled to immunity from liability for any injury caused by an act in connection with a governmental or proprietary function.   (ECF No. 5 at 10.)   LCJVSD further argues that it cannot also be held liable for punitive damages, pursuant to the law of Ohio.   (*Id.* (citing Ohio Rev. Code § 2744.05).)   Therefore, LCJVSD argues that all of Plaintiff's claims based in tort are subject to dismissal, along with his claim for punitive damages.

Plaintiff counters that Ohio Rev. Code § 2744.02 does not bar his claims.   (ECF No. 7 at 7–8.)   However, Plaintiff fails to identify any exception to § 2744.02 that would apply to his claim and only copies the language of the statute into his argument.   (*Id.*)   Plaintiff has only highlighted language that establishes the existence of exceptions, but he fails to identify any that might apply. (*Id.*)   He then restates the thrust of his claims, that he was told LCJVSD was accredited in West

Virginia; that he paid "thousands of dollars" for "worthless" credits; and that he could not sit for the West Virginia Journeyman Electrician Test.   (*Id.* at 8.)

Ohio Rev. Code § 2744.01(F) defines a political subdivision as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."   Pursuant to Ohio Rev. Code § 2744.02(A)(1), a political subdivision "is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."[15]   Importantly, this section also establishes that the functions of a political subdivision are classified as governmental and proprietary functions.   *Id.*

This grant of immunity is subject to several exceptions.   A political subdivision may be liable if an injury is caused by the negligent operation of a motor vehicle by an employee while the employee is engaged in the scope of their employment and authority;[16] the negligent performance of acts by its employees with respect to the proprietary functions of the political subdivision; the negligent failure to keep public roads in repair and unobstructed; the negligence of employees that occurs on the grounds of, or is due to the physical defects on the grounds of, buildings used in connection with the political subdivision; or when the Ohio Code expressly imposes liability upon the political subdivision.   *See* Ohio Rev. Code § 2744.02(B).   As a final note, Ohio Rev. Code § 2744.05 establishes that in an action to recover damages against a political

---

[15] Ohio Rev. Code § 2744.01(2)(c) establishes "[t]he provision of a system of public education" as a governmental function.

[16] Notably, this exception is itself subject to exceptions, all involving the operation of emergency response vehicles, provided that the operation of the vehicle was not willful or wanton misconduct.   *See* Ohio Rev. Code § 2744.02(B)(1)(a)–(c).

subdivision caused by an act or omission in connection with a governmental or proprietary function, punitive damages shall not be awarded.

LCJVSD is clearly a political subdivision under the plain language of Ohio Rev. Code § 2744.01(F).   Furthermore, LCJVSD is clearly engaged in a governmental function by providing a system for public education, and even Plaintiff's allegations suggest as much.   (ECF No. 1–2 at ¶ 6 ("The Defendant was/is a corporation registered in Ohio which provided . . . higher education classes[.]").)   Plaintiff's only argument is to apparently highlight the section of code providing some limited exceptions to the statutory grant of immunity, but without actually explaining what these limited exceptions are or how they might apply to his claims.   In the Court's view, Plaintiff has not and cannot show the application of any of the enumerated exceptions.   The apparent laziness and frivolity of this argument is not lost on the Court.

For the foregoing reasons, LCJVSD's motion is **GRANTED** as to all of Plaintiff's claims asserted against it, including Plaintiff's claim for punitive damages in Count XI.

### 5.   *The West Virginia Consumer Credit Protection Act*

LCJVSD's next argument is that Plaintiff has failed to allege that LCJVSD extended him credit or granted him credit for the payment of educational services at the Career Center.   (ECF No. 5 at 10–11.)   Because there has been no allegation of the granting or extension of credit to Plaintiff, LCJVSD argues that any purported contract between Plaintiff and it does not meet the definition of a consumer credit sale under the West Virginia Consumer Credit Protection Act. (*Id.*)

Plaintiff responds by arguing that he adequately alleged a cause of action because he alleged that he was required to pay for the courses offered by the Career Center; needed to take

out loans to pay for those courses; incurred debt that was reported on Plaintiff's credit reports; and was harmed by said debt.   (ECF No. 7 at 8–9.)

The West Virginia Consumer Credit Protection Act represents "a comprehensive attempt on the part of the West Virginia Legislature to extend protection to consumers and persons who obtain credit in state."   *Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 72 (W. Va. 2010).   The Act applies if a consumer and resident of West Virginia "is induced to enter into a consumer credit sale . . ., to enter into a consumer loan . . ., or to enter into a consumer lease[.]"   W. Va. Code § 46A-1-104(1).   The Act defines a "consumer credit sale" as follows:

> (13)(a) Except as provided in paragraph (b), "consumer credit sale" is a sale of goods, services or an interest in land in which:
>
> (i) Credit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card;
>
> (ii) The buyer is a person other than an organization;
>
> (iii) The goods, services or interest in land are purchased primarily for a personal, family, household or agricultural purpose;
>
> (iv) Either the debt is payable in installments or a sales finance charge is made; and
>
> (v) With respect to a sale of goods or services, the amount financed does not exceed forty-five thousand dollars or the sale is of a factory-built home as defined in section two, article fifteen, chapter thirty-seven of this code.
>
> (b) "Consumer credit sale" does not include a sale in which the seller allows the buyer to purchase goods or services pursuant to a lender credit card or similar arrangement.

W. Va. Code § 46A-1-102(13).   Similarly, the West Virginia Consumer Credit Protection Act defines "consumer loan" as follows:

> (15) "Consumer loan" is a loan made by a person regularly engaged in the business of making loans in which:

(a) The debtor is a person other than an organization;

(b) The debt is incurred primarily for a personal, family, household or agricultural purpose;

(c) Either the debt is payable in installments or a loan finance charge is made; and

(d) Either the principal does not exceed forty-five thousand dollars or the debt is secured by an interest in land or a factory-built home as defined in section two, article fifteen, chapter thirty-seven of this code.

*Id.* at § 46A-1-102(15).

Either of these definitions are fatal to Plaintiff's claim.   First, the complaint lacks any allegation that the Career Center or, more appropriately, LCJVSD was the entity actually loaning Plaintiff the funds to pay for his education.   "By its plain terms, to constitute a consumer credit sale, credit is granted to the consumer *by a seller who regularly engages in credit transactions* of the same kind *or* pursuant to a seller credit card."   *Mountain State College v. Holsinger*, 742 S.E.2d 94, 100 (W. Va. 2013).   LCJVSD can be more aptly described as a "seller of educational services," and not an entity who regularly engages in credit transactions of the same kind.   *See id.*

This conclusion is only more illuminated by Plaintiff's response to LCJVSD's motion.   There, Plaintiff asserts that he took out loans to pay for the courses at the Career Center and that he has acquired debt in the form of student loans.   (ECF No. 7 at 9.)   Plaintiff noticeably does not assert, in either his complaint or his response to the motion, that he obtained credit—or his student loans—from LCJVSD directly, but only that he paid tuition to LCJVSD.   As the Supreme Court of Appeals of West Virginia observed in a strikingly similar case, "[i]nstead, credit was granted to the respondents in the form of student loans by parties no longer involved in this case.   To put it simply, the college as the seller of education services did not extend credit to the respondents for the payment of those services."   *Mountain State College*, 742 S.E.2d at 100.

For the foregoing reasons, LCJVSD's motion is **GRANTED** as to Plaintiff's claim under the West Virginia Consumer Credit Protection Act.

*IV.   CONCLUSION*

Plaintiff's arguments in response to LCJVSD's motion to dismiss are so utterly frivolous, lazy, and sloppy that this Court has considered whether to order Plaintiff and his counsel to show cause as to why they should not be sanctioned for this response under Federal Rule of Civil Procedure 11(c)(3).   However, because Defendant LCJVSD has not moved this Court for sanctions, the Court has decided against ordering the Plaintiff and his counsel to show cause at this time.

Plaintiff and especially his counsel are admonished, however, because such frivolous litigation greatly and unnecessarily increases the burden on the Court.   It does so at the expense of the other litigants, and it is at odds with the expectations set forth in Rule 11.   The future pursuit of frivolous litigation in this Court will not be taken lightly.

For the reasons stated above, the Court **GRANTS** Lawrence County Joint Vocational School District's Motion to Dismiss, (ECF No. 4), and **DISMISSES** the entirety of Plaintiff's complaint **WITH PREJUDICE**.   As Defendant West Virginia Fire Commission, Office of the State Fire Marshal has already been voluntarily dismissed from this action, the Court **DENIES AS MOOT** the WVFC motion to dismiss.   (ECF No. 6.)   The Court further **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

26

ENTER:          December 8, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE